### 8366

### CARR v. MOUZON.

1. REAL PROPERTY—TWO ACTIONS—RES JUDICATA.—UNDER SUB. 2 OF SEC. 98 OF THE CODE OF PROCEDURE a plaintiff may maintain a second action for the possession of real property against the same party on the same cause of action upon payment of the costs of the first action, provided the second action is brought within two years after termination of the first action.

*Henderson* v. *Kenner,* 1 Rich. 477, *criticised.*

2. IBID.—PLEADINGS—FRAUD.—The defense that a link in the chain of plaintiff's title to real property was obtained by fraud and undue influence may be proved under a general denial of title in plaintiff. Nor is it necessary to allege notice to plaintiff of such fraud before purchase by him, where the defense is pleaded.

Before COPES, J., Williamsburg, January term, 1911. Modified.

Action by W. H. Carr against S. R. Mouzon *et al.* Defendants appeal.

*Messrs. Kelley & Hinds,* for appellants, cite: *As to pleading notice of fraud:* 2 Pom. Eq. Jur., par. 739; 83 S. C. 329; 68 S. C. 109; 39 S. C. 366. *The principles of res judicata apply to cases involving title to land:* 9 Rich. 387; 85 Am. Dec. 187; 102 Ill. 115; 79 N. Y. 390; 19 Ga. 124; 95 N. C. 559; 62 Miss. 271; 31 Pa. St. 381; 21 Ency. 224; 55 S. C. 509; 65 S. C. 418; 23 Cyc. 1215. *As to construction of sub. 2, sec. 98:* 15 S. C. 362; 2 N. & McC. 528; Tyler on Eqct. 807; 41 S. C. 172; 1 Rich. 477; 28 S. C. 521.

*Mr. Le Roy Lee,* contra, cites: *Purchase of title from one obtained by fraud without notice is good:* 83 S. C. 329; 14 S. C. 312; 77 S. C. 535; 52 S. C. 345; 58 S. C. 56; 9 Ency. P. & P. 684-5; 78 S. C. 482. *First action is not res judicata:* 30 S. C. 479; 64 S. C. 197; 84 S. C. 178; 41

S. C. 171; 49 S. C. 1; 67 S. C. 53; 74 S. C. 296; 81 S. C. 307; 86 S. C. 461.

November 14, 1912.    The opinion of the Court was delivered by

MR. JUSTICE HYDRICK.    This is a second action by the same plaintiff against the same defendants, or their privies, for the recovery of the same tract of land.    It was brought within two years from the rendition of the verdict in the first action, and after payment of the costs thereof.    The judgment in the first action was in favor of the defendants on the merits.

The defendants set up the first action in bar of this, and, as another defense, they alleged that B. B. Mouzon, from whom plaintiff derived his title, obtained a deed from L. W. Mouzon, under whom they claim, by means of fraud and undue influence.

The Court sustained plaintiff's demurrer to both these defenses for insufficiency, and the defendants appealed.

Subdivision 2 of section 98 of the Code of Procedure provides: "The plaintiff in all actions for recovery of real property or the recovery of the possession thereof, is hereby limited to two actions for the same, and no more:

1    *Provided,* That the costs of the first action be first paid, and the second action be brought within two years from the rendition of the verdict or judgment in the first action, or from the granting of a nonsuit or discontinuance therein."

The defendants admit that, under the foregoing section of the Code, the plaintiff has the right to bring two actions against them for the same land, but they deny that he has the right to bring the same action twice.    Otherwise stated, their contention is that the statute made no change in the well settled principle of law that a judgment on the merits of a controversy, rendered by a court of competent juris-

diction, is final and conclusive between the same parties, or their privies, with regard to the same matter.

At common law there was no limit to the number of actions of ejectment which a plaintiff might bring for the recovery of the same real property, and as each was based upon the fiction of a different lease, entry and ouster, they were not within the principles of *res judicata,* because the parties were not the same and the cause of action was different. While the difference in the parties was only nominal and in the cause of action only technical, the Courts nevertheless refused to apply the general principles of *res judicata* to such actions, supposedly because, by the common law of England, the title and right to the possession of real property was regarded with special favor, and it was thought that such important rights should not be finally determined by one action. No doubt also the fact that the plaintiff in such actions labored under so many disadvantages, as compared to the defendant in possession, and there were so many obstacles to be overcome in the prosecution of his action, fortified the idea that his claim should not be concluded by a single action. But, in course of time, the great inconvenience and manifest injustice which resulted to the party in possession of real property from this unlimited right of action on the part of the claimants thereof caused the legislature to pass the act of 1712 (2 Stat. 584, section 4), which limited the plaintiff in ejectment to one action. In 1744, that act was repealed (3 Stat. 612), and the plaintiff was allowed two actions, provided the second was brought within two years from the termination of the first. The idea that the legislature merely intended to limit the number of actions which a plaintiff in ejectment might bring to two, and that it did not intend to confer the right to bring the same action twice, is negatived by the language of the statute, which reads: "That all persons whatsoever that shall hereafter make their claim to any lands or tenements within the time limited by law,

and bring their action by ejectment for the same, shall proceed upon such action to trial with that convenient expedition which the nature of the process and the rules and practice of the Court will permit, and shall not delay the same, but by special order or rule of Court; and in case verdict and judgment shall pass against the plaintiff in such action, or that he suffers a nonsuit or discontinuance, or any other ways let fall the same, such verdict or judgment, nonsuit or discontinuance, or other letting fall the action or suit aforesaid, shall not be conclusive and definite on the part of such plaintiff, but, at any time within two years, the *said plaintiff*, or any other person or persons, claiming by him or under him, shall have right, *and is hereby empowered,* to commence his action for the recovery of *the said lands* and tenements *de novo* and prosecute the same in the manner and with the expedition hereinbefore directed; and in case verdict and judgment shall again pass against *such plaintiff*, or that he suffers a nonsuit or discontinuance, or other ways let *fall his said action a second time,* then such second verdict or judgment, nonsuit or discontinuance shall be finally conclusive on the part of every such plaintiff, and of and from any further action or suit for the recovery of the said lands and tenements in question, he shall be and is hereby debarred and forever excluded, and the right and title of the defendant in and to the same, shall be from thenceforth firmly settled and established against such plaintiff only, his heirs and assigns, any former law, usage or custom to the contrary notwithstanding."

The words italicized show clearly that two actions between the same parties for the same cause were contemplated, and that it was intended to confer a right or privilege which had not existed before.

There is some language in the opinion of the Court in *Henderson* v. *Kenner,* 1 Rich. 477, which supports the view of appellants, but the remarks of the learned Judge, upon

the point we are now considering, were *obiter,* as the case turned upon other points.

The act of 1744 was repealed in 1872 (Rev. Stat. 1872, p. 787) and the section of the Code above quoted was passed in 1879 (17 Stat. 76). *In Columbia Water Power Co.* v. *Columbia Land Co.,* 42 S. C. 488, 20 S. C. 378, in discussing and construing this section of the Code with regard to the effect of the failure to pay the costs of the first action before commencing the second, the Court said: "It is urged that there was no judgment entered upon the order of discontinuance, and, therefore, no legal termination of the former action. Without laying any stress upon the fact that this view would leave the former action still pending, which would be fatal to the present action, we think the more conclusive answer is, that the statute, which *gives this special privilege* to the plaintiff of bringing a second action upon compliance with certain conditions, does not contemplate or require that a judgment of discontinuance shall be entered" (italics ours). To the same effect is *Peterman* v. *Pope,* 74 S. C. 298, 154 S. C. 569. If, as said in the case in 42 S. C., *supra,* the pendency of the first action would have been fatal to the second, it necessarily follows that the two actions were between the same parties and for the same cause, for upon no other hypothesis could the pendency of the first have been fatal to the second.

We must bear in mind, also, that when the statute which we are now considering was adopted, radical changes had been made in legal procedure. The technical pleadings of the common law and feigned issues had been abolished. John Doe and Richard Roe could no longer sue and defend; but actions (with few exceptions) had to be prosecuted and defended by the real parties in interest. The action for "recovery of real property" had been substituted for the common law action of ejectment. The statute must be construed in the light of these changes. It would be

difficult, indeed, to conceive how a *second* action "for recovery of real property" could be brought by the same plaintiff against the same defendant for the same land, unless it were upon the same cause of action. Such an action presupposes that the defendant therein is in possession of the land in dispute, and it is predicated upon his refusal to surrender the possession thereof to the plaintiff. Therefore, a second action for the same land must be for the same cause.

To be sure, there are other forms of action by which the title to real property may be brought in issue and determined, as for instance, an action for damages for trespass in the nature of common law action of trespass *quare clausum fregit,* an action for rents and profits, and actions for foreclosure of mortgage or partition in which a defendant sets up an independent legal title in himself, but none of these are actions "for recovery of real property," and therefore they do not fall within the provisions of section 98, above quoted. *Tompkins* v. *R. Co.,* 30 S. C. 479, 19 S. E. 521; *Elmore* v. *Davis,* 49 S. C. 1, 26 S. E. 898; *Foster* v. *Foster,* 81 S. C. 311, 62 S. E. 320.

In *Tompkins* v. *R. Co.,* the same plaintiff brought a second action against the same defendant for the recovery of the same land. The defendant pleaded *res judicata.* On motion of plaintiffs, the plea was stricken out, as irrelevant, the Circuit Court holding: "That this is the second action for the recovery of the real property described brought by the plaintiffs, and having paid the costs of the former action, and having commenced this within two years after the judgment in the former action, they had the right under the statute to bring the present action." On appeal to this Court the ruling was sustained. That case seems to be directly in point and conclusive of the question.

The Court held that the defense of fraud in plaintiff's title was insufficient, because defendants failed to allege

that plaintiff had notice of the fraud before he purchased the land. This was error. As a general rule, the plea of *bona fide* purchaser for value without notice is affirmative in its nature, and the burden of proving it is upon him who desires the benefit of it. *Lupo* v. *True,* 16 S. C. 579; *McElwee* v. *McGill,* 57 S. C. 1; 35 S. E. 401; *Robert* v. *Ellis,* 59 S. C. 137, 37 S. E. 250.

The contention of appellant that the plea is available only as a defense is untenable. There is no reason why a plaintiff may not have the advantage of it. In *Peay* v. *Seigler,* 48 S. C. 514, 26 S. E. 885, the Court held that the plaintiff would have had the right to the benefit of the plea, if it had been established by the evidence. True, where a plaintiff desires to rely upon it to defeat a defense set up in the answer of his opponent, as in this case, he may prove it without formally pleading it, because the plaintiff is not required, under the Code, to reply to any new matter in the answer, except a counterclaim, unless by special order of the Court. But where it is relied upon as a defense, it must be pleaded. *Lupo* v. *True, supra.*

Where a·plaintiff sues to recover real or personal property and alleges title in himself, the defendant may, under a general denial, prove that plaintiff's title is void for fraud. *Archer* v. *Long,* 38 S. C. 277, 16 S. E. 998, and cases cited. It follows that no special form of allegation was necessary in pleading the invalidity of plaintiff's title, because it was permissible to prove it, under the general denial, without specially pleading it.

So much of the order of the Circuit Court as sustained the demurrer to the plea of *res judicata* is affirmed, and so much thereof as sustained the demurrer to the defense of fraud is reversed.

Modified.

MR. JUSTICE WOODS *did not sit.*