17624

Mary Lawrence Gaddy SMITH, Respondent, v. William M. DU RANT, Appellant

(113 S. E. (2d) 349)

*Henry E. Davis, Esq.,* of Florence, *for Appellant,*

82

*Messrs. McEachin, Townsend & Zeigler,* of Florence, and *E. H. Whitehead,* of Lake City, *for Respondent,*

March 8, 1960.

STUKES, Chief Justice.

This action is for the possession of a lot of land fronting 212.37 feet on U. S. Highway 52 in the town of Lake City to which respondent claims title as the heir at law of her parents. Appellant pleaded title in himself and further that respondent is estopped to claim the property by her silence during his use of it.

Respondent became of legal age on the 9th day of December, 1946. The action was commenced by service of the summons and complaint on March 7, 1956. It is seen that insufficient time elapsed for title to have been obtained by appellant by adverse possession. His counsel conceded during the trial that adverse possession was not an issue and added, "I will make the case squarely on the proposition that under Judge Lide's decree we go up to 56A. * * * It is a construction of Judge Lide's decree." The meaning of this

quotation will be understood upon statement of the facts which follows.

Respondent's father, T. A. Gaddy, who owned land including that in controversy, died intestate in 1935 leaving as his heirs at law respondent and her mother, Mrs. Mamie B. Gaddy who died intestate in 1953. The latter procured a subdivision of the property and a plat of it by E. L. Isenhower, Surveyor (now deceased), dated Sept. 20, 1938, which was duly recorded. Upon it there was shown a triangular lot, 59A, at the intersection of the highway and a street now called Moore Street. Adjoining it on the northeast is lot 58A, with 58 feet frontage on the highway, then lot 57A of 65 feet frontage and adjoining the latter on the northeast lot 56A of 100 feet frontage. The evidence established that the plat was in error and the lot in dispute of 212.37 feet frontage lies between lots 57A and 56A, having been overlooked and omitted from the plat by the surveyor.

In the fall of 1945 respondent's mother and respondent by guardian *ad litem,* she being a minor, brought an action in the Court of Common Pleas, making appellant defendant, for authority for the sale and conveyance of respondent's undivided interest in lots 57A, 58A and 59A to appellant. The latter was their tenant in a filling station on lot 59A.

Upon proper proceedings the court by decree dated Sept. 13, 1945, authorized the sale and directed conveyance by the master to appellant of the then minor respondent's interest in the property, describing first the triangular corner lot 59A on the Isenhower plat and also, quoting from the decree, "All those two certain pieces, parcels or lots of land adjoining the above described lot, situate, lying and being on U. S. Highway 52, and known and designated as the northern portion of lot 58A, less a road or street passing through the southern portion thereof, deeded to Town of Lake City, S. C., and lot 57A as shown on the plat hereinabove referred to." The master's deed to appellant and the separate deed of respondent's mother to him contained the

same description as has been quoted from the decree. It is noted that no boundaries of lot 57A were given although the erroneous plat, to which reference was made, showed it as joining on the northeast lot 56A which, as a matter of fact, it did not, the disputed area lying between them. Lot 56A is now, and has long been, the property of one Burroughs.

The testimony indicates that appellant used the area for three years as a wood yard and also during two or three years planted crops on a portion of it. In 1951 he conveyed to the State Highway Department an additional right of way for the widening of the highway; and in 1955, after respondent demanded possession and shortly before this action was brought, he fenced the property.

In ignorance of the error in the Isenhower plat appellant did nothing until word of it came to her from another surveyor, Floyd, in November 1955. He and his associate in 1947 made a survey of the whole town of Lake City and discovered the error in the Isenhower plat. He is of admitted professional qualifications and no effort was made to contradict his testimony. He testified that he obtained appellant's deeds from him and told him, in effect, that the disputed area was not his property. Appellant requested the surveyor-witness "to be quiet about it", say nothing and, quoting again, "in a process of years he (appellant) would take the property". The witness replied that he did not want any part in that. Then appellant proposed, "How about you buying their (sic) property and let me buy it from you?" This conversation occurred in 1954. Mr. Floyd's (and his brother-associate's) plat of the property in question and that adjoining, made in 1955, was admitted in evidence. It conclusively shows the error of the Isenhower plat and, therefore, fully supports respondent's contention.

Burroughs, who owns lot 56A as shown on the Isenhower plat, which bounds the disputed area on the northeast, and moved his business there in 1953, testified that he used some of the area for a driveway and storage to which no one objected at the time and he knew nothing of the claim to it by

appellant. He measured and found "about 200 feet extra." He asked appellant who owned it and appellant replied that he did not know. Quoting from his testimony: "I said it was some extra footage in here, and if it is agreeable with you (appellant) we will use the property together and not put a building on it until we found out whose it is. He agreed to that." Later the witness and appellant agreed to divide the property for their respective use, but afterward appellant offered to rent it to the witness which the latter declined.

The appellant denied in his testimony that he told Burroughs that he did not own the disputed area and said that the latter used it by his permission. But appellant testified that he did not know whether he admitted to Surveyor Floyd that he did not own it. He testified to the operation of a wood yard on the property for two or three years, to the planting of tobacco on it for two years and truck for one year, then he let it "lay out". He fenced it after demand of respondent for possession in 1955, and put up no trespass signs.

At the conclusion of the evidence for respondent (plaintiff) the appellant (defendant) moved for nonsuit, which was overruled. At the conclusion of all of the evidence appellant and respondent moved, respectively, for directed verdict and after argument and consideration the court rendered its judgment in favor of respondent, to which this appeal has been prosecuted. There is no contention that the issues should have been submitted to the jury.

Appellant's questions on appeal will be discussed in the order in which they are presented in the brief.

The first is, Were the issues in this case *res judicata* against the plaintiff by the decree in the former suit between the same parties? We do not think that the principles of *res judicata* are applicable. The issue in the present action is title to the disputed area, which was not represented upon the Isenhower plat. The former proceeding was simply to obtain the authority of the court of equity for the conveyance of the undivided interest of the then minor, now respondent,

in the property which appellant had bargained to purchase. It could hardly be called an adversary proceeding. The issue, if it may be called such, was only the propriety of the sale of the minor's interest in the property, not the title to that beyond it to the north which was omitted from the Isenhower plat. There is no question but what appellant got all of lots 59A, 58A and 57A for which he bargained and that they contained all of the frontage on the highway which the Isenhower plat showed them to contain.

Upon *res judicata* appellant cites *Cromwell v. County of Sac*, 94 U. S. 351, 24 L. Ed. 195, *Willoughby v. North Eastern R. Co.*, 52 S. C. 166, 29 S. E. 629, *Greenwood Drug Co. v. Bromonia Co.*, 81 S. C. 516, 62 S. E. 840, *Cathcart v. Hopkins*, 119 S. C. 190, 112 S. E. 64, and *Dent v. Bolar*, 125 S. C. 63, 118 S. E. 26. This case (if the prior proceeding be deemed an action between the parties for the purpose of *res judicata*, which we do not decide) falls within the following which was quoted in the *Willoughby case* from *Cromwell v. County of Sac:* "Where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." [52 S. C. 166, 29 S. E. 632.]

Under this first question, in addition to the contention of *res judicata* by reason of the former proceeding, appellant argues the inadmissibility of the testimony of Surveyor Floyd. He objected to it and made a motion to strike it out. But, in view of the authorities hereinafter cited, we think it was admissible to show the error in the Isenhower plat. It made plain the error which, according to the testimony, had been discovered years before by Burroughs, owner abutting the disputed area on the north and by appellant, himself, whose lot 57A joined it on the south. Respondent learned of it for the first time in the fall of 1955 and instituted this action a few months afterward.

The early case of *White v. Eagan,* 1792, 1 Bay, 247, was an action of trespass to try title. The court held and said that, quoting, "parol testimony might be given in evidence, to explain the situation of land, contrary to the face of the deed; if it is evident from the nature of the thing itself, that there is a mistake in the deed, as where north is mentioned for south; or south for north, *et vice versa,* & c. The land in question being described in the deed to bound on Sir John Colleton to the north, and one Cox to the south; whereas, in fact and in truth, it did really bound on Cox to the north, and on Sir John Colleton to the south." In *Foreman v. Sandefur,* 1805, 1 Brev. 474, which was another case of trespass to try title, one of the questions was the admissibility of parol evidence to prove courses and distances which were the reverse of those marked and described on the plat and grant of the land because they contradicted and substantially varied the grant. Admission of the evidence was upheld and the court said: "Nothing is more common and more reasonable, because it is very often necessary, than to admit parol evidence of this sort to ascertain the lands described in original or other grants." *Birchfield v. Bonham,* 1843, 2 Speers, 62, was another action of trespass to try title where parol evidence was admitted to locate land which was erroneously described in the deed as bounded by Fall Branch, whereas it was not. *Norwood v. Byrd,* 1844, 1 Rich. 135, was a like form of action and similar holding and result; the syllabus is: "Where, on the face of a deed, the intention to convey a particular tract of land, is clear, but the description, by metes and bounds, is, upon a survey for the purpose of locating the tract, ascertained to be erroneous, the description by metes and bounds will be rejected as surplusage, and the land located so as to cover the tract clearly intended to be conveyed." From *Foy v. Neal,* 1847, 2 Strob. 156, another action of trespass to try title, the following is quoted: "The rule of construction of a deed is that all parts of a description should be taken together and no part suffered to control absolutely the others. * * * So it often happens that facts outside of the

deed, not inconsistent with its terms, may have a powerful effect." The first sentence of this quotation was cited with approval and applied in *Powers v. Rawls,* 119 S. C. 134, 156, 112 S. E. 78.

*Wheeler v. Wheeler,* 111 S. C. 87, 96 S. E. 714, involved a controversy as to whether a stated swamp boundary included the swampland beyond the edge of the swamp. Parol and other extrinsic evidence was admitted to explain and fix the boundary, which was objected to upon the contention that it tended to contradict or vary the description contained in the deed. It was held that the evidence was admissible and that when the intention of the parties is established by competent evidence, it will be given effect. In that case the plat which accompanied the deed served to correct and explain the description in the deed. It is analogous to the situation in the instant case, in that the resurvey here serves to correct the original, erroneous plat; but for the mistake in the latter, there would be no controversy. The rule was stated in *Carson v. McCaskill,* 111 S. C. 516, 524, 99 S. E. 108, 111, as follows: "But a paramount rule is that parol testimony, whether of declarations, acts, or of the *res gestae,* is inadmissible to vary the terms of written instrument. When an instrument is ambiguous, parol testimony is admissible to remove the ambiguity; but, except in cases of fraud, accident *or mistake* (emphasis added) it is always admitted for the purpose, subject to the limitation that it must be consistent with the instrument, and therefore that it must not tend to contradict or vary its terms." It was applied in that case in the following language: "Under the rule and in harmony with it, parol testimony was admissible to show what land was included in the home tract of grantor's father, and also to show all the facts and circumstances surrounding the parties, so that the court might read the description in the light of the circumstances, and determine what was meant by 'lands of the estate of Kenneth McCaskill,' and locate the southern boundary intended."

*Scates v. Henderson,* 44 S. C. 548, 22 S. E. 724, 725, cited by the trial judge, was an action for recovery of a lot of land in the city of Columbia. A boundary was misstated in a decree of sale in foreclosure and in the resulting master's deed, which may be likened to the situation in the case at bar. Extrinsic evidence was admitted to establish the location of the lot. The following is from the opinion: "The first question to be considered in a case of this kind is: If the boundary alleged to be erroneously set forth in the description of the property is rejected, does enough remain to render certain the *locus in quo?* When this can be done, the law permits the rejection of such erroneous boundary. In the case of *Bratton v. Clawson,* 3 Strob., 127, the court says: 'On this subject the rule laid down in Shep. Touch. is, that when there is, in the first place, a sufficient certainty and demonstration and an additional term of description which fails in point of accuracy, it shall be rejected as surplusage.' In this case the description of the lot would be certain if the words describing the eastern boundary are rejected as surplusage.  *  *  *  To correct an error of this kind does not require that resort should be had to a court of equity. The rule for determining the location of the land is clearly expressed in 2 Am. & Eng. Enc. Law, p. 497, as follows: 'In the endeavor to ascertain the limits or boundary of the land which the grantor intended to convey, the courts will ascertain, if possible, all the circumstances surrounding and connected with the parties and the land at the time of the conveyance, since parties are presumed to refer to the condition of the land at that time, and the meaning of the terms used in the description can only be ascertained by a knowledge of the relative positions of themselves and of the land.'  *  *  *  Every surrounding circumstance in this case shows that the description of the eastern boundary was a mistake, and that the presiding judge was right in admitting such testimony."

Likewise, the reasonable inference from the evidence in the case in hand is that the intention of the parties to the contract of purchase and sale in 1945 and the

judicial proceeding to authorize the conveyance of respondent's interest was to sell to the purchaser, the instant appellant, and he to buy, the lots designated by number in the proceeding and deeds, and not to include the adjoining area which was omitted from the plat through the blunder of the surveyor. Running through all of the cases is the principle that it is the intention which governs and when it is not expressed accurately in the deed, evidence *aliunde* may be admitted to supply or explain it. The instrument is not thereby varied or contradicted, which would be inadmissible; but it is explained or corrected. There is no literal variance or contradiction of the decree and deeds here because they do not state the boundaries of lot 57A; true, they refer to the plat which shows lot 57A in juxtaposition to lot 56A on the north or northeast, but the evidence shows beyond doubt that the latter was the mistake of the surveyor and between lots 57A and 56A lies the disputed area of over two hundred feet highway or street frontage. Appellant's position is inconsistent. He claims that he bought by the Isenhower plat whereby his purchase included the disputel area and extended toward the north to lot 56A; but the plat did not include or show the disputed area. How, then, could he have acquired the disputed area if he bought by the plat?

In *Richardson v. Register,* 227 S. C. 81, 87 S. E. (2d) 40, 43, the plat made for the purpose of the sale was found to be in error and extrinsic evidence was admitted to establish the intention of the parties. The court said: "Defendant's first contention is that the plaintiff was bound by his plat of 1943, made for the purpose of his purchase, which showed the disputed boundary as claimed by the defendant. But we think that the deed was properly held by the court to be subject to explanation by extrinsic evidence in order to show the intention of the parties. The plat was made a part of the description but the land was also identified as that formerly owned by Annie J. Johnson, which the preponderance of the evidence showed extended to the southern line which was claimed by plaintiff. There was, therefore, a

latent ambiguity in the description, which made extrinsic evidence competent."

The law in other jurisdictions appears to be the same as is reflected in our decisions which have been cited. *Detroit, Grand Haven & Milwaukee R. Co. v. Howland,* 246 Mich. 318, 224 N. W. 366, 68 A. L. R. 1, and appended annotation, 68 A. L. R. 4. In the subject case there was an error in the plat of a subdivision and when a twenty-foot strip was conveyed off the rear of some of the lots to the railroad company to increase the width of its right-of-way a substantial overlap of the original right-of-way was discovered. In the report it is stated that the action was to correct the deed. It was held by the lower court that the deed estopped the parties, which was reversed on appeal. It was held unnecessary to correct the deed in a court of equity and parol testimony was admissible. The court said: "It is patent, from all the circumstances surrounding the parties to this transaction and the parol testimony in the case, that only by accepting that description in the deed that covers a strip of land 20 feet wide bounded by and adjoining plaintiff's right of way is the intent of the parties carried out."

From pages 40 and 74 of the cited annotation the two following paragraphs are quoted:

"It appears that frequently a discrepancy arises between a description of land in a deed or mortgage and the plat or map of the land referred to therein. In such cases the courts seem to have held uniformly that parol evidence is admissible to explain the variance, and to identify the land intended to be conveyed."

"Where land is described merely by a lot number, or a lot and block number, an ambiguity often arises from the fact that, on the application of the description to the ground, there appear to be several lots of the number specified in the instrument, or there appears to be no lot as numbered in the deed or mortgage, or that there is some uncertainty as to just what land is included in the lot, etc. Parol evidence is usually allowed in such cases."

In support of his first question, stated above, appellant relies upon the authority of *Ex parte Winkler,* 31 S. C. 171, 9 S. E. 792. We think it is distinguished on the facts. There the mortgage referred to the lot by its number on the map of the lot. No surveyor's mistake was involved.

We find no merit in the foregoing, first question.

Appellant's second question is stated in the brief as follows: "In the case of a conflict in the description in a deed between the calls for distances and the calls for boundaries, which control? His point is that the Isenhower plat shows his lot 57A to be bounded on the north, or northeast, by lot 56A on the plat which should control because the conveyances to him refer to the plat, although the frontage of his lot 57A is stated on the plat to be 65 feet whereas under his contention the frontage would be in the neighborhood of 300 feet. He resorts to the rule that the distance shown on a plat is of lesser importance in locating the land than is the boundary, which is of course true; but it is not an inflexible rule. From the first case cited by him to the point and referred to as the leading case on the subject, *Fulwood v. Graham,* 1 Rich. 491, we quote the syllabus: "In locating lands, the following rules are resorted to, and generally in the order stated. (1.) Natural boundaries; (2.) Artificial marks; (3.) Adjacent boundaries; (4.) Course and distance. Neither rule, however, occupies an inflexible position, for when it is plain that there is a mistake, an inferior means of location may control a higher." In his next authority, *Douglass v. Fernandis,* 2 Bailey, 78, it was said concerning mistakes in plats: "Our books of reports furnish many cases on this subject, and upon reference to them it will be found that lands have been located on the opposite side of a water course from that on which it was represented to lie; and that it has been necessary to reverse every course in the plat to obtain the true location; because in the application of the plat to the marks of location found on the ground, it was apparent that the description given in the plat was erroneous: and I cannot conceive of one more pal-

pably so, than exists here." Next cited is *Sturgeon v. Floyd,* 3 Rich. 80, which followed *Fulwood v. Graham, supra,* that *natural marks* will control course and distance, even though the line should exceed the length called for four or five times, and it was said that distance is not regarded when it conflicts with either the actual marks made by the surveyor or the well-ascertained marks called for on the plat, such as creeks, swamps, rivers or roads. We have none of these with respect to the purported line on the Isenhower plat separating lot 57A from lot 56A.

Also cited by appellant is *Klapman v. Hook,* 206 S. C. 51, 32 S. E. (2d) 882, 883, which illustrates the general rule that the distance on a plat or other description ordinarily gives way to the marks on the ground made by the surveyor, if they are in conflict. Here, as already said, we have none such. The court said in the *Klapman case:* "Of course, the rules above referred to are not inflexible and are subject to modifications, dependent upon the peculiar facts of particular cases. *Holden v. Cantrell* [100 S. C. 265, 84 S. E. 826] *supra,* and *Connor v. Johnson* [59 S. C. 115, 37 S. E. 240] *supra.* The vital question is the intent of the grantor at the time the deed is executed." There as here there was a mistake in the plat and it was rejected, so that the case may be said to be authority for affirmance here.

Other cases cited in the brief to this point are *Connor v. Johnson,* 59 S. C. 115, 37 S. E. 240, *Holden v. Cantrell,* 100 S. C. 265, 84 S. E. 826, and *Brownlee v. Miller,* 208 S. C. 252, 37 S. E. (2d) 658. They appear to add nothing to the authorities which have been reviewed above and this opinion will not be prolonged in order to review them.

Generally speaking, as indicated by the above authorities, the implication in this second question of appellant is sound, but it is not controlling of the instant case. It is, therefore, overruled.

The third question on appeal is the contention that respondent is estopped by reason of her silence during the approximately nine years after she became of

age before she demanded possession of the property and, upon appellant's refusal, brought this action. The evidence as to appellant's use of it and sale of a right-of-way over a portion of it to the Highway Department has been stated. The use was of little consequence and no improvements were made. The fence was erected only after respondent demanded possession and she proceeded to bring this action very shortly after she became aware of her right and after appellant denied it. Estoppel was not referred to in the circuit decree, doubtless because it was abandoned by appellant's counsel at the trial. See the quotation *supra*—"It is a construction of Judge Lide's decree." (Nor was *res judicata* discussed *eo nomine,* but implicit in the decree was the holding that the doctrine did not apply.) Apart from that, it is plain that the case does not come within the authority of *McClintic v. Davis,* 228 S. C. 378, 90 S. E. (2d) 364, cited by appellant. The question must be overruled.

Appellant's fourth and final question is that the decree under appeal is in error because there was no prior reformation of the judgment and deeds to him. The numerous authorities which are cited hereinabove in the discussion of the first and second questions show that in such a case as this reformation is not prerequisite to relief in an action at law. Rather out of place here, appellant cites *Renwick v. Renwick,* 9 Rich. 50, which was an action to try title and it was held that the plat which accompanied the deed could not be contradicted by parol. The case was distinguished from the line of authorities *ante* with the characteristic clarity of expression of Judge O'Neall, as follows: "The two first grounds in relation to the plat might be sustained, where it was no more than a mere representation; but here it is referred to in the deed and made a part of it, and of course, parol could not alter, vary or contradict it. *If there had been mistake, it would be another question.*" (Emphasis added.)

The exceptions are overruled and the judgment affirmed.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.